(165 App. Div. 235)

GNECCO v. PEDERSEN.

(Supreme Court, Appellate Division, Second Department. December 31, 1914.)

HIGHWAYS (§ 173*)—USE OF HIGHWAY—AUTOMOBILES—COLLISION WITH PEDESTRIAN—NEGLIGENCE—EVIDENCE.

    Where defendant, while slowly driving a light automobile along a highway, lost control of it because a dog suddenly ran in front of it, and, being run over, caused it to swerve to the side of the road and strike plaintiff, a pedestrian, such facts were insufficient to establish that defendant was guilty of actionable negligence.

    [Ed. Note.—For other cases, see Highways, Cent. Dig. §§ 459, 460; Dec. Dig. § 173.*]

    Thomas and Rich, JJ., dissenting.

Appeal from Trial Term, Queens County.

Action by James Gnecco against Hans P. Pedersen. From a judgment for plaintiff, and from an order denying defendant's motion for a new trial, he appeals. Reversed, and new trial granted.

Argued before JENKS, P. J., and BURR, THOMAS, RICH, and STAPLETON, JJ.

William G. Johnson, of New York City, for appellant.

George F. Hickey, of New York City (M. P. O'Connor, of New York City, on the brief), for respondent.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

BURR, J. This case comes before us for the third time. Upon the first appeal, a judgment in favor of the plaintiff was set aside as being against the clear weight of the evidence. Gnecco v. Pedersen, 155 App. Div. 914, 140 N. Y. Supp. 1121. Upon a new trial, plaintiff again recovered a verdict. That was, upon the same ground, set aside. Gnecco v. Pedersen, 160 App. Div. 904, 144 N. Y. Supp. 1118.

There is substantially no difference, so far as the evidence offered by the plaintiff is concerned, from that considered upon the previous trials. In some respects it is weaker, because of more serious contradictions therein. The evidence in behalf of the defendant is equally strong. Notwithstanding the great respect that should be given to the verdict of a jury upon a question of fact, particularly where the trial judge declines to interfere, we cannot feel that we are doing our duty if we allow this judgment to stand. Upon neither of the previous appeals was any opinion written. Because we feel constrained to reverse a judgment in plaintiff's favor for the third time, it may not be amiss to analyze the evidence and point out the weakness of plaintiff's case.

Plaintiff, an old man, walking along a road in Queens county, in the former town of Flushing, known as Queens road or Queens avenue, was struck by an automobile owned and operated by defendant, and sustained severe injuries. The accident happened on March 22, 1910. Queens road, or avenue, runs east and west. On the south is a cemetery, known as Flushing Cemetery. The center of the roadway was then covered with macadam. Now it is covered with asphalt. The improved portion of the road was then about 16 feet wide. On either side of this, grass had been permitted to grow; and there is evidence on the part of the plaintiff that, on the north side of the road, a path had been worn through its frequent use by pedestrians. Plaintiff, according to his testimony, was passing along this path, between 2 and 3 o'clock in the afternoon, and was walking in a westerly direction. The evidence of defendant's witnesses is to the effect that he was walking in the roadway itself. For the purposes of this decision we may accept plaintiff's testimony upon this point. Defendant's automobile was coming from the opposite direction, traveling east. Some of the witnesses for the plaintiff testified that it was going "rather fast." The great weight of evidence, on the part of the witnesses for the defendant, is that at this point the road was upgrade, that the car was a small Ford car, and that it was not going more than five or six miles an hour. The fact that it stopped within about ten feet would indicate that it was not proceeding at an unlawful rate of speed. Just before the car reached a point in the road opposite to the path on which plaintiff was traveling, it suddenly swerved to the left and struck him. This, unexplained, might justify a finding of negligence in the operation of the car. Defendant's explanation is that just at that moment two dogs had been playing in the road, to the right of the automobile or on the south side of the road, and that suddenly one of them dashed across the road immediately in front of the car; that the left front wheel of the car struck the hind quarters of the dog; that he was knocked down and passed under the body of the car, although not

under its wheels; and that this sudden collision deflected the car and caused it to swerve. If this is true, we cannot see how defendant's negligence was established.

After calling a witness to show distances and locations, defendant himself took the stand, and stated that he had been operating a car for three or four years; that the car which he was operating on this day was a Ford car, with a seat for two passengers in front and a rumble in the rear. Gottlieb Knoedler was in the car with him. About 50 feet in the rear of this car there was another automobile, proceeding in the same direction, operated by John Schock. This was a five-passenger car, and in the car with Mr. Schock were Mrs. Pedersen, Mrs. Knoedler, his wife, and his daughter. Defendant testified that after the collision the car stopped in four or five feet, and that, after the accident, so far as he observed, the dogs disappeared. His testimony as to the manner of the happening of the accident is corroborated by Gottlieb Knoedler, Nellie Knoedler, John Schock, and, to some extent, by his wife, Barbara Schock. The defendant also called as a witness Annie Engel, who testified that after the accident, and after a crowd had gathered, and while plaintiff was being assisted to his daughter's residence, she saw a dog following plaintiff, which she recognized as one belonging to his daughter. William H. Wooster, who was also operating an automobile on the same road, testified that as he came up shortly after the accident he saw plaintiff's car in a diagonal position across the road, and "it seemed as if it had just about come to a stop, and immediately back of it was a dog." William Sugden also testified as to the presence of a dog on that occasion. This comprises substantially the testimony by the defendant as to the presence of the dogs and the cause of the accident.

Outside of the testimony of the plaintiff, which was to the effect that he had no dogs with him, and that he saw no dogs on that occasion, only one witness was called by the plaintiff, who from her position might testify as to the presence or absence of the dogs. Her testimony will be considered later. Three witnesses were called by plaintiff: Madeline Walter, who at the time of the accident was about 12 years old; Ethel Felcher, about the same age; and Jessie Loffink, who was 11 years old at the time of the accident. It is conceded that this accident happened about where Twenty-Fifth street would, if continued, cross the Queens road, intersecting the same. From Twentieth street up, the streets terminate on the north side of this road. These three girls were at the cemetery entrance, which is at Twenty-Second street. There is evidence on the part of defendant, not contradicted, that this is about 600 feet from the place of the accident. Madeline Walter testified that she saw the automobile, operated by defendant, pass her at the cemetery gate, and that she did not notice it again until she saw it standing still after the accident. She did not see it strike plaintiff. She testified that she saw no dogs; but it is perfectly evident that this negative testimony is of no avail, for her attention was not directed, even, to the scene of the accident until after it occurred. Ethel Felcher was with the last witness, and she testified that they stopped and let the automobile pass. She says that she did not see

the accident, but that afterward they saw the people gathering and all the girls that were with her ran up, and plaintiff had then been assisted to his feet. She testified that she did not see any dogs on that occasion; but her testimony is equally valueless because, not only was her attention not directed to the scene of the accident at the time of its occurrence, but she did not even notice that there was a second automobile there when she first arrived at the place where Mr. Gnecco was injured. Jessie Loffink, the third of the girls, testified in like manner that they came out of the gate at Twenty-Second street together; that the automobile passed them and she did not see it again until after the accident. She also testified that she saw no dogs; but she also testified that she did not see the other automobile when she first arrived at the place of the accident.

Celia Vondinsky testified that she was walking west, in the same direction as Gnecco, on the south side of the road. On the previous trial she testified that defendant's automobile had passed her, and her back was to it when the accident happened. She hedges a little, on this trial, by saying that plaintiff was on the other side of the street from her, about three inches or six inches behind her. She also testified that she saw no dogs; but she also testifies that no other automobile was there when the accident happened. Such testimony is at the best of a negative character, given by persons who were not in a position to see the occurrence, and whose attention was not called to the same. It is of no weight as against the affirmative evidence of the adult witnesses called by defendant, some of whom were disinterested, as to the presence of the dogs, and that collision of the car with one of the dogs caused the accident.

Lawrence Meegan was a new witness called by the plaintiff, although it appeared that he was in court on the previous trial. He did not arrive at the scene of the accident until Rose Noxon, a witness whose testimony is afterward considered, was binding up Gnecco's arm. His testimony, that he saw no dogs on that occasion, is for this reason of no value. This witness also testified to the alleged admission by the defendant that he had lost control of the machine. Testimony of such a character is always suspicious. Defendant might have lost control of the machine through the conduct of the dogs, as he doubtless did. Meegan testified upon this point:

"I heard the old man [that is, the plaintiff] say to Mr. Pedersen, 'You tried to kill an old man,' and he said, 'No, I didn't try to do it intentionally; I lost control of my machine.'"

William E. Waddell, a police officer, testified that, after the accident, Pedersen said that he struck an obstacle in the road. His testimony is vague and indefinite. He thought that defendant said he struck a stone, but he was not positive about this; but he did say he did not recollect Pedersen saying anything about the dog. Theresa Shire, a daughter of the plaintiff, also testified to an alleged admission by defendant. After her father had been brought home and was lying on the lounge, she testifies that he said to defendant:

"'You did do it, and you done it intentionally,' and he said, 'No, old man, I didn't mean it.' 'I did it, but I have no account of how I did do it, and I couldn't account for it.'"

Although she was examined as a witness on the previous trial, she admitted that she said nothing about this alleged statement of the defendant on that occasion. Henry Shire, the husband of the last witness and son-in-law of the plaintiff, testified that, in the house, plaintiff—

"accused Mr. Pedersen of *intentedly* running over him, and Mr. Pedersen said. 'No, I am to blame for the accident, but I can't account for how it occurred;' but he said, 'I didn't do it *intentedly*.'"

It also appeared that, although he was present on the previous trial, he did not testify, and testimony of such a character, given under such circumstances, is of little, if any, probative value.

One other witness, Rose Noxon, was called on behalf of plaintiff. She was perhaps in a position where she could see what went on, and she did testify that she did not see any dogs before the accident. But she also testified that she did not notice the other automobile until after she had been over to the place where plaintiff was lying, and had bound up his arm, and they were about to go away to plaintiff's daughter's house. Apparently at the time of the accident she was only 11 years old, although she seemed to be somewhat confused even as to her age. There were also contradictions in her testimony as to the exact place where she was before the accident. She first said she was placing plants upon her grandmother's grave; then that she was placing these plants upon her great-grandmother's grave, which was between Twenty-Fourth and Twenty-Fifth streets, and about 3 yards from the fence. Her grandmother's grave was opposite Twenty-Third street, and this must have been nearly, if not quite, 400 feet from the scene of the accident. She testified that, when she saw the plaintiff struck down, she jumped over the fence, which she admitted was 4½ feet high. She did not know and could not tell whether there was also a hedge there or not. The only evidence on the part of the plaintiff as to the presence of the dogs, which might be of any value, is that of this last witness. Her whole testimony, when read together—perhaps because of her age, perhaps because of her embarrassment in the courtroom, or perhaps for other reasons—was unconvincing, contradictory, and not to be relied upon. It certainly does not seem to me to be sufficient to sustain a verdict in favor of the plaintiff against the strong evidence offered by the defendant.

The judgment and order should be reversed, and a new trial granted; costs to abide the event. All concur, except THOMAS and RICH, JJ., who dissent.